Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| ERNESTO CAMPOS SÁNCHEZ<br><br>Recurrido<br><br>ROXANA DE JESÚS DÍAZ<br><br>Peticionaria<br><br>EX PARTE | TA2026CE00563 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.:<br>K DI2012-1770<br><br>Sobre:<br>Divorcio (C.M.) |
| --- | --- | --- |

Panel integrado por su presidenta; la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard

*Lebrón Nieves, Juez Ponente*

## RESOLUCIÓN

En San Juan, Puerto Rico, a 5 de junio de 2026.

El 7 de mayo de 2026, compareció ante este Tribunal de Apelaciones la señora Roxana María De Jesús Díaz (en adelante, señora De Jesús Díaz o parte peticionaria), mediante recurso de *Certiorari*. Por medio de este, nos solicita que revisemos la *Resolución* emitida el 18 de marzo de 2026 y notificada el 20 de marzo de 2026, por el Tribunal de Primera Instancia, Sala Superior de San Juan. En virtud del aludido dictamen, el foro *a quo* concluyó que el desacato no es el mecanismo adecuado para un cobro de dinero de una pensión excónyuge.

Por los fundamentos que adelante se exponen, se *deniega* la expedición del recurso de *certiorari*.

### I

Conforme surge del expediente ante nuestra consideración, el señor Ernesto Campos Sánchez (en adelante la parte recurrida o señor Campos Sánchez) y la señora De Jesús Díaz contrajeron matrimonio entre sí el 21 de diciembre de 1986 en San Juan, Puerto

Rico. Durante su vínculo matrimonial, las partes procrearon dos hijos, quienes en la actualidad son adultos.[1]

Posteriormente, el 4 de diciembre de 2012, las partes de epígrafe interpusieron ante el foro primario, una *Petición* de divorcio por la causal de Consentimiento Mutuo. Entre los acuerdos avalados y recogidos en la *Sentencia* de **10 de diciembre de 2012**, las partes estipularon que el recurrido le pagaría a la peticionaria una pensión excónyuge de $3,500.00 mensuales, más el plan médico.[2]

Ante el alegado incumplimiento del recurrido con el pago de la pensión excónyuge, el 20 de junio de 2025, la peticionaria recurrió al foro *a quo* mediante *Moción de Desacato*.[3] En la misma, la peticionaria adujo que, el recurrido hacia pagos esporádicos de la pensión excónyuge y nunca la cantidad que venía obligado a pagar. Estimó la suma adeudada en $150,000.00. Añadió que, las condiciones de salud de la peticionaria le impiden proveer para su sustento.

El 26 de junio de 2025, notificada el mismo día, la primera instancia judicial ordenó que, por el tiempo transcurrido, se emplazara nuevamente al recurrido.[4]

El 29 de enero de 2026, la parte peticionaria interpuso *Moción Solicitando Emplazamiento por Edicto*[5], en la cual le acreditó al foro primario mediante la certificación de diligenciamiento negativo del alguacil Franklin Pagán Reyes y una declaración jurada del emplazador Raúl Canales Vázquez, que, a pesar de las gestiones realizadas, el recurrido no pudo ser emplazado. Certificó que el

---

[1] Véase Sentencia de Divorcio de 10 de diciembre de 2012, notificada el 28 de diciembre de 2012. (Anejo 3 del recurso).
[2] Véase Sentencia de Divorcio de 10 de diciembre de 2012, notificada el 28 de diciembre de 2012. (Anejo 3 del recurso) y *Resolución* emitida por el foro *a quo* el 18 de marzo de 2026 (Anejo 1 del recurso).
[3] Véase Anejo 4 del recurso.
[4] Véase Anejo 5 del recurso.
[5] Véase Anejo 6 del recurso.

referido escrito fue notificado al recurrido a su dirección de correo electrónico de récord.

El mismo día, 29 de enero de 2026, notificada el 30 de enero de 2026, el foro *a quo*, declaró Ha Lugar la solicitud de la peticionaria para emplazar al peticionario por edicto y emitió *Orden* a tales efectos.[6]

Conforme surge de la *Moción Sometiendo Documentos y Solicitud de Señalamiento*, presentada por la parte peticionaria ante el foro primario el 3 de marzo de 2026[7], el emplazamiento por edicto expedido fue publicado el 16 de febrero de 2026. La peticionaria afirmó que, tenor con las disposiciones de las Reglas 4.6 y 4.7 de las de Procedimiento Civil, el referido edicto fue publicado en un periódico de circulación general de la Isla de Puerto Rico. Dentro de los diez (10) días siguientes a la publicación del edicto, el mismo fue notificado al recurrido por correo certificado con acuse de recibo al lugar de su última dirección física o postal conocida, así como a su correo electrónico. Con la *Moción Sometiendo Documentos y Solicitud de Señalamiento* de 3 de marzo de 2026, la parte peticionaria acompañó, además, copia de la orden disponiendo el emplazamiento por edicto; del edicto del emplazamiento y una copia de la *Moción de Desacato* presentada. La parte peticionaria afirmó que, el referido escrito fue notificado al recurrido a su dirección de correo electrónico de récord.

El 4 de marzo de 2026, con notificación del 6 de marzo de 2026, la primera instancia judicial señaló Vista de Desacato Presencial para el 18 de marzo de 2026, cuyo señalamiento fue notificado al recurrido a su dirección de correo electrónico de récord.[8]

---

[6] Véase Anejo 7 del recurso.
[7] Véase Anejo 8 del recurso.
[8] Véase Anejo 9 del recurso.

El 18 de marzo de 2026, el Tribunal de Primera Instancia emitió el siguiente dictamen:

## RESOLUCIÓN

Después de estar inactivo el expediente por 12 años se solicitó el auxilio del tribunal para poner en vigor la siguiente estipulación:

### Pensión de Excónyuge

El peticionario, Ernesto Campos Sánchez le pasará a la peticionaria Roxana María De Jesús Díaz en concepto de pensión excónyuge la suma de tres mil quinientos ($3,500.00) dólares mensuales, más plan médico.

La suma corresponde a la sentencia de divorcio por la causal de consentimiento mutuo fechada 10 de diciembre de 2012.

Mediante Moción de Desacato fechada 20 de junio de 2025 se solicitó el pago de $150,000.00.

Ordenamos el emplazamiento personal, pero el 29 de enero de 2026 se presentó una declaración jurada en donde se expresa que el Lcdo. Ernesto Campos no pudo ser emplazado. Se autorizó el emplazamiento por edicto que fue publicado el 16 de febrero de 2026.

El demandado no contestó. Se anotó la rebeldía.

Celebrada la vista, la señora Roxana De Jesús testificó bajo juramento que solamente reclama por el periodo del 20 de junio de 2020 hasta que radicó su moción el 20 de junio de 2025 y por los nueve meses de julio de 2025 al 18 de marzo de 2026.

Su testimonio es que siempre el señor Campos ha incumplido con la suma de $3,500.00 mensuales estipulados, pero que ella solo reclama $2,500.00 mensuales a razón de $150,000.00 en 5 años.

Con relación a los meses de julio 2025 a marzo 2026 declaró que $5,620.00 quedando a deber $25,880.00.

La suma total del reclamo es $175,880.00.

El tribunal concluye que los $175,880.00 es una deuda liquida y exigible que debe Ernesto Campos Sánchez a la señora Roxana María De Jesús Díaz.

La señora De Jesús podrá utilizar todos los mecanismos de cobro de dinero aplicables.

Concluimos que el mecanismo de desacato no es el adecuado para un cobro de dinero de una pensión excónyuge en las circunstancias de este caso.

Notifíquese por edicto.[9]

Inconforme con dicha determinación, la parte peticionaria presentó el 30 de marzo de 2026, *Moción de Reconsideración Parcial y Solicitud de Conclusiones de Derecho*.[10]  El 7 de abril de 2026, notificada al día siguiente 8 de abril de 2026, el foro primario declaró la misma No Ha Lugar.[11]

En desacuerdo, la parte peticionaria acudió ante este foro revisor mediante el recurso de *Certiorari* de epígrafe, en la cual esbozó el siguiente señalamiento de error:

> ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TPI AL DETERMINAR QUE EL DESACATO NO ES EL MECANISMO ADECUADO PARA COBRAR UNA PENSIÓN EXCÓNYUGE.

El 22 de mayo de 2026, compareció ante este foro revisor la parte recurrida mediante *Oposición a que se Expida el Certiorari sobre Solicitud Post Sentencia*.

Con el beneficio de la comparecencia de las partes, procedemos a disponer del recurso ante nuestra consideración.

## II

### A. El Certiorari

El certiorari es un recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar discrecionalmente una decisión de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821, 847 (2023); *Caribbean Orthopedics v. Medshape et al.*, 207 DPR 994, 1004 (2021); *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020).[12] Ahora bien, tal "discreción no opera en lo abstracto. A esos efectos, la Regla 40 del Reglamento del Tribunal de

---

[9] Véase Anejo 1 del recurso.
[10] Véase Anejo 10 del recurso.
[11] Véase Anejo 11 del recurso.
[12] Véase también, *Medina Nazario v. McNeil Healthcare LLC,* 194 DPR 723, 728-729 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012); *Pueblo v. Díaz de León,* 176 DPR 913, 917 (2009).

Apelaciones,[13] dispone los criterios que dicho foro deberá considerar, de manera que pueda ejercer sabia y prudentemente su decisión de atender o no las controversias que le son planteadas". *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008) (citas omitidas); *Pueblo v. Rivera Montalvo*, supra, pág. 372; *Torres González v. Zaragoza Meléndez*, supra, pág. 848. La precitada Regla dispone lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa de los procedimientos en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.[14]

No obstante, "ninguno de los criterios antes expuestos en la Regla 40 del Reglamento del Tribunal de Apelaciones, [*supra*], es determinante, por sí solo, para este ejercicio de jurisdicción, y no constituye una lista exhaustiva". *García v. Padró*, 165 DPR 324, 335, esc. 15 (2005). Por lo que, de los factores esbozados "se deduce que el foro apelativo intermedio evaluará tanto la corrección de la

---

[13] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, In re Aprob. Enmdas. Reglamento TA, 2025 TSPR 42, pág. _, 215 DPR __ (2025). https://dts.poderjudicial.pr/ts/2025/2025tspr42.pdf
[14] *Íd.*

decisión recurrida, así como la etapa del procedimiento en que es presentada; esto, para determinar si es la más apropiada para intervenir y no ocasionar un fraccionamiento indebido o una dilación injustificada del litigio". *Torres Martínez v. Torres Ghigliotty*, supra, pág. 97. (Énfasis omitido).

El certiorari, como recurso extraordinario discrecional, debe ser utilizado con cautela y solamente por razones de peso. *Pueblo v. Díaz de León*, 176 DPR 913, 918 (2009). Este procede cuando no está disponible la apelación u otro recurso que proteja eficaz y rápidamente los derechos del peticionario. *Íd.*; ver también *Pueblo v. Tribunal Superior*, 81 DPR 763, 767 (1960). Nuestro Tribunal Supremo ha expresado también que:

> [D]e ordinario, el tribunal apelativo no intervendrá con el ejercicio de la discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial. *Zorniak Air Servs. v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000); *Rivera et al. v. Arcos Dorados et al.*, supra, pág. 210.

### B. La pensión ex cónyuge en nuestro ordenamiento

Cuando un divorcio coloca en estado de necesidad económica a uno de los excónyuges, quien primero responde por esa necesidad, luego de la comunidad de bienes, es el otro ex cónyuge. La base de esta pensión la provee el Artículo 109 del Código Civil de 1930, 31 LPRA sec. 385[15], el cual establece que, una vez decretado un divorcio, el Tribunal de Primera Instancia podrá asignar a cualquiera de los excónyuges que no cuente con suficientes medios para vivir "alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del otro cónyuge".

---

[15] Se hace referencia a las disposiciones del Código Civil de 1930, *supra*, por ser este de aplicación al caso de marras.

El derecho a solicitar alimentos al amparo de dicho artículo surge del "derecho fundamental de todo ser humano a existir y a desarrollar plenamente su personalidad". *González v. Suárez Milán*, 131 DPR 296, 301 (1992). En ese sentido, las pensiones alimentarias de excónyuges están revestidas del más alto interés público. *Cortés Pagán v. González Colón*, 184 DPR 807, 814 (2012). *Correa Márquez v. Juliá Rodríguez*, 198 DPR 315, 326 (2017).

El criterio principal al momento de conceder una pensión excónyuge es el binomio constituido entre la necesidad económica por parte del alimentista y la capacidad económica por parte del alimentante. *Toppel v. Toppel*, 114 DPR 16, 19-20 (1983). Establecidos esos elementos, y el hecho de que la carencia económica haya surgido como consecuencia del divorcio, procede el derecho a la pensión. *Morales v. Jaime*, 166 DPR 282, 302 (2005). De ahí que, si bien el Artículo 109 establece otros criterios a considerar al otorgar la pensión excónyuge, éstos solo se toman en cuenta para fijar el monto de la obligación y no como una carga probatoria adicional que deba suplir el reclamante. *Id.*, pág. 306. *Correa Márquez v. Juliá Rodríguez*, supra, págs. 326-327.

Así, pues, al fijar el monto de la pensión excónyuge, el Tribunal también considerará lo siguiente: (1) acuerdos a los que hubiesen llegado los ex cónyuges; (2) la edad y el estado de salud; (3) la cualificación profesional y las probabilidades de obtener un empleo; (4) la dedicación pasada y futura a la familia; (5) la colaboración con las labores profesionales del otro cónyuge; (6) la duración de la relación conyugal; (7) el caudal y medios económicos y las necesidades de uno y otro cónyuge, y (8) cualquier otro factor que considere apropiado dentro de las circunstancias del caso. 31 LPRA sec. 385. Ahora bien, considerando que estas y otras circunstancias pueden cambiar con el transcurso del tiempo, también nuestra Máxima Curia ha dispuesto que los dictámenes

sobre pensiones excónyuges tienen un carácter dinámico, por lo que están sujetos a modificación según varíe la situación de necesidad del alimentista o la capacidad económica del alimentante. *Cortés Pagán v. González Colón*, supra, págs. 814-815. *Correa Márquez v. Juliá Rodríguez*, supra, pág. 327.

**III**

La parte peticionaria nos solicita que revisemos la *Resolución* emitida por el foro *a quo* el 18 de marzo de 2026 y notificada el 20 de marzo de 2026.  En su único señalamiento de error, nos plantea que, erró y abusó de su discreción el Tribunal de Primera Instancia al determinar que el desacato no es el mecanismo adecuado para cobrar una pensión excónyuge.

Evaluado el recurso presentado por la parte peticionaria, al amparo de los criterios para la expedición del auto de *certiorari*, en ausencia de los criterios expuestos en la Regla 40 de nuestro Reglamento, *supra*, resolvemos no intervenir con el mismo.

**IV**

Por los fundamentos que anteceden, se *deniega* la expedición del recurso de *certiorari*.

Notifíquese.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones